**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ENVIROCON, INC.,** **a Montana corporation,** | ) | CA 05 516 |
| **Plaintiff,** | ) | **Civil Action No. __________** |
| **v.** | ) | |
| **ARCADIS G&M, INC.,** **a Delaware corporation,** | ) | |
| **Defendant.** | ) | |

**COMPLAINT FOR DAMAGES**

NOW COMES Plaintiff, Envirocon, Inc. ("Envirocon") and files this, its Complaint against Defendant ARCADIS G&M, Inc. ("ARCADIS"), showing this Honorable Court more particularly as follows:

**PARTIES**

1. Envirocon is a Montana corporation with its principal place of business at 100 International Way, Missoula, Montana 59808.

2. Envirocon is authorized to transact business in the State of Rhode Island.

3. ARCADIS is a Delaware corporation with its principal place of business at 630 Plaza Drive, Suite 200, Highlands Ranch, Colorado 80129.

4. ARCADIS is authorized to transact business in the State of Rhode Island and may be served with process by service upon its registered agent therein, to wit, CT

Corporation System at 10 Weybosset Street, Providence, Providence County, Rhode Island 02903.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction of the matter herein pursuant to 28 U.S.C. § 1332 because Envirocon and ARCADIS are citizens of different states, and the amount in controversy herein exceeds the sum or value of $75,000, exclusive of interests and costs.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(1) because ARCADIS resides in this judicial district.

**FACTS COMMON TO ALL COUNTS**

**The Subcontract**

7. On or about September 19, 2003 Envirocon and ARCADIS entered into a written subcontract entitled General Subcontract No. D03-0005 (the "Subcontract"). A true and correct copy of the Subcontract, minus voluminous specifications, drawings and work plans, is attached hereto as Exhibit "1". By reference, the entire Subcontract, including voluminous specifications, drawings, and work plans not attached, is incorporated into the Complaint as if fully set forth herein.

8. Pursuant to the Subcontract, Envirocon agreed to furnish all labor, materials, methods, services, tools, machinery and equipment necessary for the construction of the work depicted on the Construction Drawings entitled Sachuest Point Landfill Closure Plan, Sachuest Point

National Wildlife Refuge, Middletown, Rhode Island, and dated June 23, 2003 (the "Drawings"), and the Work described in the Technical Specifications, entitled Technical Specifications for Sachuest Point Landfill Closure Plan, Sachuest Point National Wildlife Refuge, Middletown, Rhode Island, dated June 2003 (the "Specifications") (hereinafter collectively the "Specified Work").

9. The Subcontract required Envirocon to perform the Specified Work within designated locations of the Sachuest Point National Wildlife Refuge located in Middletown, Newport County, Rhode Island (hereinafter sometimes referred to as the "Property" or the "Project").

10. The United States Department of the Interior, Fish and Wildlife Service (the "Owner") owns and operates the Property.

11. Pursuant to the Subcontract, Envirocon agreed to perform the Specified Work for an initial fixed price of $2,616,749.60 (the "Subcontract Price").

12. The Subcontract expressly allows Envirocon to perform authorized additional or extra work for additional compensation.

13. The Subcontract expressly provides that conditions that could not reasonably have been anticipated by Envirocon from information available to it may constitute a changed condition entitling Envirocon to an equitable adjustment to the Subcontract Price or time for performance, to the extent

such changed condition materially affects Envirocon's cost or schedule to perform the Specified Work.

14. The Subcontract expressly provides that Envirocon has the right to seek an equitable adjustment to the Subcontract Price or the time for performance for delays in the completion of the Specified Work by reason of any act or omission of ARCADIS.

**The Specified Work**

15. Envirocon performed the Specified Work in two primary areas on the Property. These are more particularly described as follows:

(a) The High Fill Area ("HFA"), which was the primary disposal area for the landfill that was located on the Property, comprised of approximately 15 acres and located on the Southwest portion of the Property; and

(b) The Low Fill Area ("LFA"), which was the construction debris disposal area for the landfill that was located on the Property, comprised of approximately 6 acres and located on the Northeast portion of the Property.

16. The Specified Work, as initially detailed in the Drawings and Specifications, encompassed five primary construction tasks, which included:

(a) Clearing and stripping vegetation from the LFA and HFA;

(b) Excavating approximately 62,500 cubic yards of non-hazardous waste from the LFA and placing it in the HFA;

(c) Additional "surgical excavation" of lead impacted soils in the LFA that ARCADIS was supposed to identify through confirmatory sampling;

(d) Dewatering of excavations as needed. All water collected was either to be transported off-site for disposal, or collected, tested, and discharged if permitted;

(e) Reconfiguring the HFA surface to exhibit a native environment, and installing a cover system over the waste depository. ARCADIS initially designed the cover to include, from bottom to top:

i) Subbase layer;
ii) Geotextile layer (10 oz. non woven);
iii) 6″ thick gas venting layer;
iv) 40-mil LLDPE geomembrane layer;
v) 12″ thick drainage layer;
vi) Geotextile layer (10 oz. non woven);
vii) 8″ thick protective cover; and
viii) 4″ thick vegetated topsoil cover.

; and

(f) Backfilling and regrading the LFA to create a salt marsh wetland environment designed by ARCADIS.

17. Pursuant to the Subcontract, the following activities were expressly excluded from the Specified Work to be performed by Envirocon: 1) construction oversight; 2) confirmatory sampling in the LFA; 3) on-site health and safety coverage; 4) on-site quality control coverage; and 5) the provision of all specified fill soils, with the exception of topsoil.

18. Envirocon performed and has substantially completed the Specified Work.

**Extra/Out of Scope Work**

19. During the course of performing the Specified Work, ARCADIS repeatedly required Envirocon to perform extra

or additional work that was not initially part of the Specified Work ("Extra Work").

20. ARCADIS frequently authorized Envirocon to perform this Extra Work pursuant to written directives, which were typically in the form of Project Change Orders, or PCOs.

21. In some instances, ARCADIS verbally authorized Envirocon to perform Extra Work, which was then followed up with written authorization from ARCADIS.

22. Envirocon relied upon these authorizations from ARCADIS to perform the Extra Work and to seek corresponding compensation therefor.

23. In consideration of Envirocon performing the Extra Work, ARCADIS was required to compensate Envirocon for its additional time and expense, pursuant to the Subcontract.

24. The exact method of compensation for a discrete item of Extra Work was specified in the Subcontract, unless otherwise provided in ARCADIS' written authorization.

25. Envirocon performed and has substantially completed all of the Extra Work requested by ARCADIS.

26. Envirocon incurred significant costs and expenses in performing the Extra Work.

27. During the Project, ARCADIS repeatedly told Envirocon, both prior to requesting the same and thereafter, that it would pay Envirocon for all Extra Work performed.

28. Envirocon initiated and performed all Extra Work with the reasonable expectation that ARCADIS would properly

pay Envirocon for such work, as ARCADIS represented to Envirocon.

29. Envirocon established separate Project account codes to track its costs for performing Extra Work.

30. Envirocon periodically submitted Force Account sheets to ARCADIS, which tracked additional costs and time spent on performing discrete items of Extra Work.

31. ARCADIS approved many of these Force Account sheets.

32. If ARCADIS disagreed with Envirocon on its Extra Work charges, representatives of Envirocon and ARCADIS would communicate with each other to resolve such differences.

33. After Envirocon reasonably believed that such differences had been resolved, based on prior discussions and correspondence with ARCADIS, it would submit invoices to ARCADIS for payment of the Extra Work.

34. ARCADIS directed Envirocon to participate in this process for seeking authorization to perform and payment for Extra Work.

35. ARCADIS has not paid Envirocon for all of the Extra Work that ARCADIS authorized Envirocon to perform and/or has wrongfully denied Envirocon's claim for certain Extra Work.

36. ARCADIS never intended to pay Envirocon for all Extra Work performed by Envirocon.

**Additional Specified Work Due to Changed Conditions**

37. During the course of performing the Specified Work, Envirocon was required to perform additional work due to changes in the original scope of work and/or conditions on the Property that were not known to, nor reasonably could have been anticipated by, Envirocon when it executed the Subcontract (collectively "Additional Specified Work").

38. The Subcontract anticipated that Envirocon would move miscellaneous steel and tire debris from the LFA to the HFA. However, because the extent of steel and tire debris was greater than expected, ARCADIS required Envirocon to transport this material to an offsite landfill for disposal.

39. During its work in the LFA, Envirocon encountered large diameter tree stumps. State of Rhode Island permit conditions prohibited these much larger than anticipated stumps from being placed in the HFA; instead requiring removal and off site disposal by Envirocon.

40. Pursuant to the Subcontract, Envirocon was not responsible for providing any of the fill soils used for the Specified Work, except for designated quantities of topsoil.

41. ARCADIS and others provided these fill soils, which Envirocon was then required to handle, transport and place within designated areas of the Property.

42. The fill soils provided by ARCADIS and others differed materially from that which was originally specified, which caused Envirocon to incur additional cost

and expense in the handling, transportation, treatment and placement of these fill soils.

43. The non-hazardous waste materials in the LFA differed materially in both quantity and content from that indicated in the bid documents. As a result, Envirocon had to perform unanticipated work to this additional non-hazardous waste.

44. ARCADIS unilaterally altered the design of the HFA cover system by eliminating two of the specified layers and combining a third.

45. ARCADIS' design change caused Envirocon to perform additional work to the HFA's underlying waste repository, and to the redesigned HFA cover system.

46. Envirocon had to procure and place topsoil in excess of the estimated quantity designated in the Subcontract because ARCADIS changed the design of the HFA cover system.

47. ARCADIS unilaterally changed the excavation profiles in certain Project areas.

48. ARCADIS' design changes to the excavation profiles, combined with limited availability of fill soils to be provided by ARCADIS and others, created a situation where additional fill soils were needed.

49. To address this need, ARCADIS authorized Envirocon to procure and place more readily available

topsoil in other Project areas, including the Wet Meadows Excavation Area, as a substitute fill soil.

50. Envirocon agreed to perform such Additional Specified Work with the reasonable expectation that ARCADIS would compensate Envirocon according to the Subcontract.

51. To that end, Envirocon submitted quantity calculations provided by its topsoil supplier, and confirmed by Envirocon, in order to justify payment for this item.

52. ARCADIS has, without explanation, failed and refused to accept Envirocon's quantity calculations for the additional topsoil that Envirocon provided.

53. ARCADIS never intended to pay Envirocon for the additional topsoil provided.

54. Envirocon's performance of the Additional Specified Work materially affected its cost to perform the Specified Work.

55. Envirocon timely and repeatedly notified ARCADIS that this Additional Specified Work materially affected its cost to perform the Specified Work, and timely sought an equitable adjustment to the Subcontract Price.

56. The Subcontract entitles Envirocon to recover its additional costs for performing the Specified Work due to the Additional Specified Work.

57. Envirocon performed and has substantially completed all of the Additional Specified Work.

58. ARCADIS has not yet fully compensated Envirocon for the Additional Specified Work performed and/or has wrongfully denied Envirocon's claim for certain Additional Specified Work.

**Delays/Impacts to the Specified Work**

59. The Subcontract required Envirocon to perform the Specified Work within a stated period of time, pursuant to a construction schedule (the "Project Schedule").

60. The initial Project Schedule prepared by ARCADIS indicated that Envirocon would substantially complete the Specified Work on or about March 31, 2004, but no later than mid-April, 2004.

61. Envirocon commenced the Specified Work on or about September 19, 2003.

62. Envirocon did not substantially complete the Specified Work, the Extra Work and the Additional Specified Work until on or about March 31, 2005.

63. During the course of performing the Specified Work, the Extra Work, and the Additional Specified Work, Envirocon encountered delays to the original Project Schedule, which caused it to incur significant additional cost and expense.

64. Weather conditions during the winter of 2004 period differed materially and significantly from that

reasonably anticipated by Envirocon when it submitted its bid for the Project.

65. Among other consequences, these extremely severe weather conditions caused Envirocon to temporarily suspend its operations from January 27, 2004 until March 28, 2004.

66. ARCADIS expressly acknowledged that these winter weather conditions were much more severe than anticipated and fully contemplated that Envirocon would receive additional compensation for the delays associated therewith.

67. In response to ARCADIS' express acknowledgement of the weather delay claim, Envirocon submitted a detailed calculation of its additional costs incurred at that time.

68. ARCADIS responded to this initial calculation nearly two months after Envirocon submitted it, but did not question Envirocon's entitlement to additional monies.

69. Between February and June of 2004, Envirocon and ARCADIS representatives engaged in multiple discussions and meetings discussing Envirocon's weather delay claim.

70. These conversations and meetings produced a formal claim for weather delay costs that Envirocon submitted to ARCADIS on or about June 17, 2004.

71. Pursuant to the June 17, 2004 weather delay cost claim, ARCADIS authorized Envirocon to invoice for roughly $76,500 of its claim and reserve its right to recover the rest.

72. A copy of Envirocon's June 17, 2004 weather delay cost claim is attached to this Complaint as Exhibit "2" and, by reference, incorporated as if fully set forth herein.

73. In reliance upon ARCADIS' actions leading up to the June 17, 2004 weather delay cost claim, Envirocon continued to track its costs associated with weather delays, and continued to submit its revised delay cost calculations to ARCADIS.

74. Envirocon was also forced to suspend its work from June 30, 2004 through July 25, 2004 due to lack of necessary materials for Envirocon to perform the Specified Work (the "July, 2004 suspension").

75. The July, 2004 suspension of Specified Work occurred because ARCADIS had not yet completed certain design work necessary for Envirocon to complete its work.

76. In order to mitigate its increased costs and reduced productivity, Envirocon significantly reduced the number of employees and equipment, pending ARCADIS' completion of its design efforts.

77. Despite these actions by Envirocon, Envirocon still incurred additional costs and expense during the July, 2004 suspension.

78. ARCADIS delayed Envirocon's ability to perform the Specified Work where it unilaterally re-designed the salt marsh wetland environment in the LFA.

79. ARCADIS delayed Envirocon's ability to perform the Specified Work where it, or others under its control, failed

to deliver fill soils in quantities sufficient for Envirocon to achieve its anticipated production rates for placement of these materials.

80. ARCADIS delayed Envirocon's ability to perform the Specified Work where it, or others under its control, failed to deliver the fill soils to specifically designated Property areas.

81. The Subcontract permits Envirocon to recover its increased costs for delays and schedule impacts caused by ARCADIS.

82. Because of the work suspensions, Envirocon incurred additional cost and expense in demobilizing and remobilizing personnel and equipment onto the Property.

83. Envirocon repeatedly and timely notified ARCADIS of the various conditions giving rise to delays and schedule impacts, and informed ARCADIS of the additional costs incurred as a result of such delays and schedule impacts.

84. These delays and schedule impacts materially impacted Envirocon's cost and time for performing the Specified Work.

85. The Subcontract permits Envirocon to recover its increased costs for delays and schedule impacts caused by unusually severe weather conditions.

86. ARCADIS delayed Envirocon's ability to perform the Specified Work where it unilaterally changed the design of the HFA cover system.

87. Envirocon has invoiced ARCADIS for a portion of its delay/schedule impact claim which, although ARCADIS previously acknowledged, it has still failed and refused to pay.

88. ARCADIS has wrongfully denied the balance of Envirocon's delay/schedule impact claim.

**The Claim Amount**

89. As a result of performing the Extra Work, the Additional Specified Work, and as a result of the delays and schedule impacts that occurred through the entire Project, Envirocon incurred significantly more cost and expense to complete all work on the Project.

90. Pursuant to the Subcontract, Envirocon is entitled to recover from ARCADIS all of these additional costs incurred.

91. As a result of performing the Extra Work, the Additional Specified Work, and as a result of the delays and impacts that occurred throughout the entire Project, it took Envirocon nearly one full year longer to complete all of its work under the Subcontract.

92. Pursuant to Modification 001 to the Subcontract (see Paragraphs 96 through 106, below), ARCADIS has acknowledged and paid $416,462.87 of these additional costs incurred by Envirocon, leaving a balance on the overall additional costs of $766,068.19 (the "Claim Amount").

93. Pursuant to Modification 001 to the Subcontract (see Paragraphs 96 through 106, below), ARCADIS has

acknowledged the additional time for performing all of the work on the Project and adjusted the overall Project Schedule by almost one full year.

94. Of the Claim Amount, $260,320.88 represents amounts for which Envirocon has already invoiced ARCADIS based on ARCADIS' prior approvals, yet ARCADIS has still failed to adjust the Subcontract Price accordingly and pay Envirocon this amount (the "Undisputed Claim Amount").

95. The remaining $505,747.30 of the Claim Amount represents a claim for costs and expenses incurred by Envirocon that ARCADIS has wrongfully denied, as well as unsubstantiated Subcontract backcharges that ARCADIS has imposed upon Envirocon (the "Remaining Claim Amount").

**Modification 001 to the Subcontract**

96. On or about June 15, 2005, Envirocon and ARCADIS executed a document entitled Modification 001 to Subcontract Number D03-0005 ("Modification 001"). Exhibit "3" to this Complaint contains a true and correct copy of Modification 001 which, by reference, is incorporated as if fully set forth herein.

97. Envirocon and ARCADIS executed Modification 001 for the following purposes, expressly stated therein:

a) To change the original statement of work by adding additional work and removing other work;

b) To increase the Subcontract Price by $416,462.87, allowing for a Modified Subcontract Price of $3,033,212.87 (the "Modified Subcontract Price"); and

c) To extend the Project Schedule by approximately one year, making the revised completion date March 31, 2005.

98. When Envirocon and ARCADIS executed Modification 001, the parties understood and agreed that there were still significant differences as to amounts that ARCADIS still owed Envirocon for Extra Work, Additional Specified Work, and Delay/Impact claims.

99. In this regard, Modification 001 expressly provides that:

> This Modification does not recognize any items currently disputed between [Envirocon] and [ARCADIS], nor does it preclude [Envirocon] to further compensation under these disputed items.

100. ARCADIS knew that there were items still in dispute and for which Envirocon was entitled to seek further compensation when it executed Modification 001.

101. ARCADIS now wrongfully contends that it had no knowledge of remaining disputed claim items.

102. ARCADIS further wrongfully contends that Envirocon is not entitled to further compensation on its remaining disputed claims.

103. When Modification 001 was executed, ARCADIS never intended to compensate Envirocon for all of the Extra Work performed.

104. When Modification 001 was executed, ARCADIS never intended to compensate Envirocon for all of the Additional Specified Work performed.

105. When Modification 001 was executed, ARCADIS never intended to acknowledge Envirocon's claims for delay and schedule impact.

106. Envirocon executed Modification 001 in reliance upon the material fact that ARCADIS knew that Modification 001 was not a full and final resolution to Envirocon's outstanding claim.

**Final Claim Notice**

107. Between June 15, 2005 and August 17, 2005, Envirocon and ARCADIS representatives engaged in discussions regarding the outstanding claim.

108. These discussions included comments by ARCADIS representatives that ARCADIS would agree to resolve the outstanding claim amount.

109. By its conduct, ARCADIS led Envirocon to believe that these discussions were intended to produce a final resolution of Envirocon's outstanding claim.

110. On or about August 17, 2005, Envirocon submitted a detailed Final Claim Notice to ARCADIS. Exhibit "4" to this Complaint contains a true and correct copy of Envirocon's Final Claim Notice, without the voluminous supporting documentation also submitted therewith, and all of which, by reference, is incorporated as if fully set forth herein.

111. Envirocon's Final Claim Notice including voluminous backup, provided detailed and substantial documentation supporting its entitlement to the outstanding claim amount.

112. Pursuant to its Final Claim Notice, Envirocon requested the following from ARCADIS:

a) Payment of all outstanding and past due retainage on the Modified Subcontract Price, totaling $213,505 on or before August 30, 2005;

b) Payment of $260,320.88, representing additional amounts previously approved by ARCADIS but for which ARCADIS has yet to adjust the Subcontract Price and tender payment to Envirocon [i.e. the Undisputed Claim Amount];

c) Payment of $505,747.50, representing the additional or unresolved claim amount for Extra Work, Additional Specified Work, additional costs due to delays and schedule impacts, and unsubstantiated backcharges [i.e. the Remaining Claim Amount]; and

d) Designation by ARCADIS of its dispute resolution panel members for purposes of complying with Subcontract Article 38.

113. Along with its Final Claim Notice, Envirocon executed and submitted to ARCADIS a Partial Claim Release and Lien Waiver (the "Partial Release"). Exhibit "5" to the Complaint contains a true and correct copy of the Partial Release and, by reference, is incorporated as if fully set forth herein.

114. In the Partial Release, Envirocon expressly excludes its Undisputed Claim Amount and Unresolved Claim Amount from being covered by the Release and Waiver.

115. On or about September 9, 2005, after receiving no response from ARCADIS to its August 17, 2005 Final Claim Notice, and after the Envirocon imposed deadline for tendering payment of the Subcontract retainage had passed, Envirocon transmitted a further demand requesting that

ARCADIS immediately pay the outstanding and past due retainage and immediately designate its dispute resolution panel members as required by Subcontract Article 38. Envirocon further requested a prompt response from ARCADIS to its Undisputed Claim Amount and Unresolved Claim Amount.

116. Shortly after Envirocon's September 9, 2005 follow up notice, ARCADIS tendered payment of the outstanding and past due retainage amount of $213,505.

117. On or about September 29, 2005, ARCADIS issued a written letter responding to the Final Claim Notice. Exhibit "5" to the Complaint contains a true and correct copy of this letter and, by reference, is incorporated as if fully set forth herein.

118. In its written response to the Final Claim Notice, ARCADIS generally denied that it owed Envirocon any additional monies under the Subcontract.

119. In its written response, ARCADIS took positions directly contrary to its prior conduct that Envirocon had relied upon in performing work and executing Modification 001.

120. In its denial of the Undisputed Claim Amount and the Remaining Claim Amount, ARCADIS wrongfully contends that Envirocon failed to comply with the Subcontract's notice requirements for submitting its claims, and that Envirocon proceeded with Extra Work and/or Additional Specified Work without prior written approval from ARCADIS.

121. ARCADIS had not previously asserted these bases for denying all or any portion of Envirocon's outstanding claim amount.

122. Envirocon has complied with the notice requirements of the Subcontract or such formal requirements have been waived by ARCADIS' conduct.

123. In its response to Envirocon's Final Claim Notice, ARCADIS did not provide any evidence or documentation to contradict or otherwise refute Envirocon's voluminous detailed backup supporting its claim.

124. ARCADIS' conclusory assertions that Envirocon failed to provide timely notice of its claim and proceeded with additional or extra work without proper authorization are (a) contrary to the parties' prior conduct and communications, including ARCADIS' acknowledgement of Envirocon's additional or extra work and claims associated therewith, and (b) insufficient to defeat Envirocon's outstanding claim.

125. ARCADIS has acted in bad faith in responding to Envirocon's legitimate claim.

126. Envirocon has satisfied the requirements set out in Subcontract Article 38 before filing the Complaint.

127. Envirocon has fully performed all of its obligations under the Subcontract.

128. Despite Envirocon's repeated requests, ARCADIS has failed and refused to acknowledge Envirocon's entitlement under the Subcontract to additional monies for performing

the Specified Work, Extra Work, Additional Specified Work and costs incurred due to delays and schedule impacts.

129. ARCADIS has obstinately refused to acknowledge Envirocon's clear legal and contractual right to recover the entire claim amount.

130. ARCADIS' obstinate refusal to acknowledge Envirocon's clear legal and contractual rights to recover the Claim Amount has caused Envirocon to incur unnecessary expense and delay including, but not limited to, the filing and prosecution of the instant litigation.

131. All conditions precedent to bringing this action have occurred, have been performed, or such occurrence or performance has been excused or waived.

**COUNT I - OPEN AND/OR BOOK ACCOUNT**

132. Envirocon incorporates by reference the allegations contained in Paragraphs 1 through 131 of the Complaint as if fully set forth herein.

133. Envirocon provided labor and materials to ARCADIS in connection with the Project.

134. Envirocon submitted invoices to ARCADIS regarding Specified Work, Extra Work, Additional Specified Work on, and Delays and Schedule Impacts to the Project, totaling $3,532,693.24.

135. To date, ARCADIS has paid Envirocon $3,033,212.92.

136. ARCADIS has neither paid the full invoice amounts nor failed to object to $260,320.88 of the unpaid invoice amount within a reasonable time.

137. The amounts properly invoiced by Envirocon, but not yet paid or disputed by ARCADIS, represent an open and/or book account in the amount of $260,320.88.

138. Pursuant to the applicable law, Envirocon is entitled to interest on the stated account, which has accrued, and continues to accrue, from the date payment would have been due had ARCADIS paid this amount.

**COUNT II - BREACH OF CONTRACT: FAILURE TO PAY CLAIM AMOUNT**

139. Envirocon incorporates by reference the allegations contained in Paragraphs 1 through 138 of the Complaint as if fully set forth herein.

140. Envirocon provided labor, equipment and materials to ARCADIS to perform the Specified Work, the Extra Work, and the Additional Specified Work.

141. Envirocon incurred significant additional cost and expense in performing this work.

142. Envirocon timely notified ARCADIS of its claim for these additional monies.

143. ARCADIS has a duty under the Subcontract, and/or other agreements between the parties, to pay Envirocon for these additional amounts legitimately claimed by Envirocon.

144. ARCADIS has failed and refused to pay all of the amounts to which Envirocon is entitled under the Subcontract and/or other agreements between the parties.

145. ARCADIS' conduct represents a substantial and material breach of its obligations under the Subcontract and/or other agreements between the parties.

146. As a direct and proximate result of ARCADIS' material breach of the Subcontract and/or other agreements between the parties for failure to pay the Claim Amounts owed, Envirocon has been damaged in the amount of at least $766,068.18, plus costs, interest, attorney's fees, lost profits, and incidental and consequential damages recoverable under applicable law.

**COUNT III - BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING**

147. Envirocon incorporates by reference the allegations contained in Paragraphs 1 through 146 of the Complaint as if fully set forth herein.

148. In all of its dealings with Envirocon under the Subcontract and/or other agreements between the parties, ARCADIS had an implied contractual duty to deal with Envirocon in good faith and fairly.

149. ARCADIS breached this implied obligation towards Envirocon by, among other misconduct, authorizing the performance of Extra Work and then failing and refusing to pay Envirocon for the same.

150. ARCADIS breached this implied obligation towards Envirocon by, among other misconduct, authorizing the performance of Additional Specified Work and then failing and refusing to pay Envirocon for the same.

151. ARCADIS breached this implied obligation towards Envirocon by failing and refusing to perform its corresponding contractual obligations.

152. ARCADIS breached this implied obligation towards Envirocon by unilaterally changing the design of certain portions of the Specified Work, after Envirocon had started work, then denying Envirocon's claim for additional compensation due to such design changes.

153. ARCADIS breached this implied obligation towards Envirocon by delaying Envirocon's performance then refusing to acknowledge Envirocon's claim for additional compensation.

154. As a direct and proximate result of ARCADIS' material breach of its implied duties of good faith and fair dealing, Envirocon has been damaged in the amount of at least $766,068.18, plus costs, interest, attorney's fees, lost profits, and incidental and consequential damages recoverable under applicable law.

**COUNT IV - QUANTUM MERUIT/UNJUST ENRICHMENT**

155. Envirocon incorporates by reference the allegations contained in Paragraphs 1 through 154 of the Complaint as if fully set forth herein.

156. At ARCADIS' request, Envirocon furnished valuable services to ARCADIS including, but not limited to labor, equipment, and materials necessary to complete the Project pursuant to the directions of ARCADIS.

157. Envirocon supplied said services and expended resources based upon ARCADIS' agreement to compensate Envirocon for the services provided.

158. ARCADIS has failed and refused, without justification in law or fact, to fully compensate Envirocon for services provided, the fair value of which is no less than $766,068.18, with interest accruing at the maximum allowable rate under applicable law.

159. As a direct and proximate result of ARCADIS' failure to fully compensate Envirocon for services provided, Envirocon has suffered and will continue to suffer damages.

**COUNT V - FRAUD**

160. Envirocon incorporates by reference the allegations contained in Paragraphs 1 through 159 of the Complaint as if fully set forth herein.

161. ARCADIS made false representations of material facts to Envirocon.

162. ARCADIS represented that Envirocon would be paid for all Specified Work.

163. ARCADIS represented that Envirocon would be paid for all Extra Work performed.

164. ARCADIS represented that Envirocon would be paid for all Additional Specified Work.

165. ARCADIS represented that it knew and understood that Modification 001 did not address the entire outstanding claim amount presented by Envirocon for Extra Work.

166. ARCADIS represented that it knew and understood that Modification 001 did not address the entire outstanding claim amount presented by Envirocon for Additional Specified Work.

167. ARCADIS represented that it knew and understood that Modification 001 did not address the entire outstanding claim amount presented by Envirocon for delays and schedule impacts.

168. ARCADIS knew that each and every one of these representations were material and that they were false when it made them.

169. ARCADIS intended to induce Envirocon to rely upon one or more of these false representations in performing the Specified Work, the Extra Work, the Additional Specified Work and/or executing Modification 001 to the Subcontract.

170. Envirocon reasonably and justifiably relied upon ARCADIS' representations to its detriment.

171. As a direct and proximate result of ARCADIS' actions in this regard, Envirocon has been damaged in amount not less than $766,068.18 plus costs, interest, attorney's fees, lost profits, and incidental and consequential damages recoverable under applicable law.

172. The above-stated egregious misconduct by ARCADIS was of such malice, wantonness, and/or willfulness and of such an extreme nature, which for the good of society and as a warning to individuals ought to be punished by an award of punitive damages to Envirocon.

173. ARCADIS' misconduct requires deterrence and punishment over and above that provided by an award of compensatory damages to Envirocon.

174. Envirocon is entitled to an award of punitive damages against ARCADIS as a result of the aforesaid.

**COUNT VI - NEGLIGENT MISREPRESENTATION**

175. Envirocon incorporates by reference the allegations contained in Paragraphs 1 through 174 of the Complaint as if fully set forth herein.

176. ARCADIS represented that Envirocon would be paid for all Extra Work performed.

177. ARCADIS represented that Envirocon would be paid for all Additional Specified Work performed.

178. ARCADIS represented that Envirocon would be paid for a significant portion of the weather delay claim presented by Envirocon on June 17, 2004.

179. By executing Modification 001, ARCADIS represented that it knew and understood that Modification 001 did not address Envirocon's entire claim for Extra Work.

180. By executing Modification 001, ARCADIS represented that it knew and understood that Modification 001 did not address Envirocon's entire claim for Additional Specified Work.

181. By executing Modification 001, ARCADIS represented that it knew and understood that Modification 001 did not address Envirocon's entire claim for delays and schedule impacts.

182. Each and every one of these representations were material.

183. When it made these material representations, ARCADIS either knew that they were false, or made these representations without knowledge as to their truth or falsity, or made these representations under circumstances in which ARCADIS ought to have known of their falsity.

184. ARCADIS knew or reasonably should have known that Envirocon would rely upon these representations.

185. Envirocon relied upon ARCADIS' representations where it continued to perform Extra Work and Additional Specified Work.

186. Envirocon further relied upon ARCADIS' representations where it refrained from action to recover additional costs and expenses due to delays and schedule impacts.

187. Envirocon relied upon ARCADIS' representations where it executed Modification 001.

188. Envirocon relied upon ARCADIS' representations where it continued in good faith to communicate with ARCADIS in and effort to resolve the outstanding claim after Modification 001 was executed.

189. As a direct and proximate result of ARCADIS' conduct in this regard, Envirocon has been damaged in amount not less than $766,068.18 plus costs, interest, attorney's fees, lost profits, and incidental and consequential damages recoverable under applicable law.

WHEREFORE, Plaintiff Envirocon, Inc. respectfully requests that this Honorable Court:

a) Enter judgment in this matter in Envirocon's favor and against Defendant ARCADIS G&M, Inc. on each and every count contained herein;

b) Award damages to Envirocon, plus interest, costs, lost profits, and incidental and consequential damages, punitive damages, attorneys' fees and expenses, and such other relief as is proper; and

c) Award such other and further relief as this Court deems appropriate.

Respectfully submitted this 12th day of December, 2005.

Plaintiff,
Envirocon, Inc.,
By Its Counsel,

Brian LaPlante, Esq.
Rhode Island Bar No. 5861
Christopher D. DiSano, Esq.
Rhode Island Bar No. 6788
**LAPLANTE & SOWA, LTD.**
67 Cedar Street
Suite 102
Providence, RI 02903
Telephone: 401-273-0200
Facsimile: 401-273-0250