**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **Envirocon, Inc.,**<br>**a Montana corporation,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ARCADIS G&M, INC.,**<br>**a Delaware corporation,**<br><br>**Defendant.** | ) | **Civil Action**<br>**No. 05CV516T** |

**PLAINTIFF'S MOTION TO COMPEL**

NOW COMES Plaintiff Envirocon, Inc. ("Envirocon"), by and through its undersigned counsel, pursuant to Fed. R. Civ. P. 37, and hereby requests the Court enter an Order compelling Defendant, Arcadis G&M, Inc. ("Arcadis") to produce all documents and things for Envirocon's on-site inspection and review consistent with the provisions of a Consent Order Regarding On-Site Inspection of Documents and Things filed with the Court by counsel for the parties on or about July 7, 2006 and signed by the Court on July 12, 2006.

Envirocon further moves this Court for entry of an order compelling Arcadis to sign and verify its responses to Envirocon's interrogatories, as required by the Federal Rules of Civil Procedure 26(g) and 33. Arcadis untimely served its responses and objections upon Envirocon and has never signed and verified these,

despite statements from its counsel that it would as well as repeated requests from Envirocon's counsel.

In further support of the instant Motion, Envirocon shows this Honorable Court more particularly as follows:

## I. STATEMENT OF RELEVANT FACTS

This case arises out of a landfill remediation project, involving work performed by Envirocon for Arcadis, which was under contract with the U.S. Fish and Wildlife Service (the "Government"). Envirocon performed its work on the Project between September of 2003 and January of 2005, at the Sachuest Point National Wildlife Refuge near Middletown, Rhode Island (the "Project"). Envirocon filed suit against Arcadis in December of 2005 seeking approximately $766,000, plus interest and attorneys' fees, to which Arcadis served an answer and certain affirmative defenses. After counsel engaged in a Rule 26(f) conference, and initial disclosures were exchanged in accordance with Fed. R. Civ. P. 26(a), discovery began.

### A. Discovery Begins.

On or about March 31, 2006, Envirocon served Arcadis with its First Interrogatories (the "Interrogatories") and with its First Request for Production of Documents and Things (the "Requests"). Under the applicable discovery rules, Arcadis was initially required to respond to this discovery no later than May 1, 2006, or waive its right to assert objections. See Fed. R. Civ. P. 33(b) and 34. In late April, Arcadis' counsel requested a brief

time extension to respond to these discovery requests, which Envirocon's counsel freely granted. See email correspondence, attached hereto as **Exhibit "1"**. Specifically, Envirocon's counsel stipulated to an extension of time up through and including May 15, 2006, which was evidenced in written communications between the attorneys. See id.

On or about May 22, 2006, Envirocon received Arcadis' responses and objections to Envirocon's Request for Production of Documents and Things (the "Document Responses"). See Arcadis' Document Responses, attached hereto as **Exhibit "2"**. Arcadis asserted many unsubstantiated objections and, contrary to the Federal Rules, asserted these outside of the time limits allowed for such, including the extension agreed to by counsel. See Fed. R. Civ. P. 34.

Envirocon's counsel informed Arcadis' counsel of this fact, but did stipulate that Arcadis could maintain objections based on attorney-client privilege and/or work product immunity, as long as Arcadis prepared and provided a so-called "privilege log" to Envirocon. See May 24, 2006 letter from Scott Walters to Brian Newberry attached hereto as **Exhibit "3"**. Arcadis neither produced a privilege log, nor sought Court protection from producing any documents covered by the Requests or from fully responding to the Interrogatories.

Not until May 26, 2006, eleven days after the stipulated extension, did Arcadis serve Envirocon with unsigned Interrogatory

Responses. See **Exhibit "4"**, containing a true and correct copy of Arcadis' unsigned Interrogatory Responses, and accompanying transmittal email from Arcadis' counsel. In the accompanying transmittal email, Arcadis' counsel indicated that he would subsequently provide a signed copy within one week. See id. As of the date of this Motion to Compel, Envirocon has still not received any signed and verified response to Envirocon's interrogatories, despite a good faith request for such by Envirocon's counsel to Arcadis' counsel that Arcadis comply with its Rule 33(b) obligations. See June 22, 2006 email from Scott Walters to Brian Newberry, attached hereto as **Exhibit "5"**.

**B. Arcadis' Piecemeal Document Production.**

Between May 23, 2006 and June 20, 2006, Arcadis produced both electronic and hard copy documents to Envirocon. Hard copy documents, comprising about 2000 pages of documents were Bates Numbered sequentially in two separate batches produced by Arcadis. Arcadis did not produce these documents in any readily apparent order. Arcadis also produced seven separate computer discs (CDs) containing stored electronic information, some of which Envirocon could not access. Of the electronic data that Envirocon could retrieve, much could be viewed with the aid of certain "standard" software, including Microsoft Word and Excel, as well as Adobe Acrobat (.pdf files). Also, Envirocon could retrieve some of the data stored as .jpg files.

None of these documents appeared to be in any reasonable form of order. Further, Arcadis did not identify how any of these documents were responsive to Envirocon's requests, other than to say that they were produced in the manner in which Arcadis kept them in the normal and ordinary course of business.

Of the information that Arcadis has produced, most has been in electronic form. Envirocon has attempted to access and review this information; however, because of the unreasonable time and expense necessary to review voluminous electronic information, file by file (of those files that Envirocon could even access), Envirocon determined that it would be much less burdensome to review hard copies of documents. Moreover, a review of hard copy documents would enable Envirocon to more thoroughly determine the extent to which Arcadis had produced responsive documents.

Furthermore, based on its review of the "piecemeal" document production by Arcadis as of June 21, 2006, Envirocon determined that Arcadis still had not produced critical written communications between Arcadis and its customer, the Government. Further, Arcadis had not produced any of its cost, invoicing, or payment records on the Project.

**C. The Status Conference Yields a Discovery Plan.**

Accordingly, on June 21, 2006, at a scheduled status conference before the Court, Envirocon's counsel explained its position regarding discovery to Judge Torres, and Envirocon requested that Arcadis produce hard copies of documents and

things, fully responsive to all of Envirocon's pending Requests. Arcadis' counsel did not dispute Envirocon's position regarding Arcadis' document production efforts, and Envirocon's entitlement to a full and fair review of Arcadis' relevant documents.

In accordance with Justice Torres' indication that the parties should address the aforesaid by agreement, immediately after the June 21, 2006 scheduling conference counsel for both parties met and discussed the specifics of such an on-site inspection. This attorney conference was followed by multiple correspondence and negotiations between the parties' respective counsel, and resulted in a written Consent Order, signed by counsel for the parties and filed with the Court on July 7, 2006. See Consent Order, attached hereto as **Exhibit "6"**.

Pursuant to the Consent Order, Arcadis agreed to produce for Envirocon's on-site inspection and review:

1) All documents and things responsive to Envirocon's First Request for Production of Documents and Things;

2) All of Arcadis' cost, invoicing and payment records related to the Arcadis/USFWS Contract; and

3) All communications between Arcadis and the USFWS.

Id.

The Consent Order further required Arcadis to produce these records for Envirocon's on-site inspection in hard copy form, except where Arcadis could only produce the information electronically. Id. In such event, Arcadis agreed to produce the

information electronically at the on-site inspection, and provide Envirocon's counsel with all equipment necessary to inspect and review such electronic records. Id.

**D. Envirocon Conducts Its On-Site Inspection of Documents.**

The Consent Order was prepared with input from, and signed by, counsel for both parties. Based on this, and with the express understanding that Arcadis would produce all specified documents for on-site inspection, lead trial counsel for Envirocon, Robert Chambers and Scott Walters, accompanied by Envirocon's General Counsel, Stephen Watson, appeared at the offices of Donovan Hatem, LLP in Boston, MA on Monday, July 10, 2006 to conduct the agreed upon on-site inspection of Arcadis' documents. See Affidavit of G. Scott Walters, attached hereto as **Exhibit "7"**. Arcadis' counsel presented Envirocon with roughly 12 bankers' boxes of documents, all in hard copy form. Id. at ¶ 8. Arcadis did not produce documents for inspection in any other medium. Id. at ¶ 9.

After reviewing these records, it became very clear to Envirocon that Arcadis had not complied with the Consent Order. Id. at ¶ 10. In fact, Arcadis had not even produced all of the documents that it had previously sent to Envirocon in electronic format, either electronically or in hard copy. Id. at ¶ 11. The

on-site inspection by Envirocon, which occurred over two days (id. at ¶ 5), was a waste of Envirocon's time and resources.[1]

Envirocon has demanded Arcadis' full production and compliance with the Consent Order no later than August 4, 2006. See **Exh. "8"**. Envirocon has made more than a good faith and reasonable effort to obtain Arcadis' production of documents without Court intervention; however, based on Arcadis' past dilatory tactics and outright disregard for an Order of this Court, Envirocon is convinced that Arcadis will not comply with the present demand. As such, Court intervention has become necessary and proper.

## II. ARGUMENT AND CITATION OF AUTHORITY

### A. Arcadis Must Produce Documents As Required By The Consent Order.

Clearly, Arcadis violated the Consent Order. As detailed herein, Arcadis cannot validly justify its violation of this order, which it helped draft. As such, the Court can and should compel Arcadis to fully and immediately comply with the Consent Order, and should hold Arcadis accountable for its blatant disregard of the Consent Order to date.

#### 1. The Court Can Order Arcadis to Produce Documents.

Upon proper motion of a party, Federal Rule of Civil Procedure 37(a) authorizes the Court to enter an order compelling

[1] After the on-site inspection, Envirocon's counsel notified Arcadis' counsel of this and demanded full production. See July 13, 2006 letter from Envirocon's counsel to Arcadis' counsel, attached hereto as **Exhibit "8"**.

disclosure of requested information through discovery. Likewise, Federal Rule of Civil Procedure 37(b)(2) affords the Court broad authority to take action against a party who has failed to comply with a discovery order. To that end, the First Circuit Court of Appeals has embraced "the now well established principle that discovery orders, other pre-trial orders and, indeed, all orders governing the management of a case are enforceable under pain of sanction for the unjustifiable violation." Barretto v. Citibank, N.A., 907 F.2d 15, 16 (1st Cir. 1990). Moreover, "[t]rial judges have considerable discretion in the selection and imposition of sanctions" due to a party's non-compliance with such order. Id.

Clearly, the Consent Order is a discovery order. Even if it were not construed as such, it is an order of the Court dealing directly with management of the case. On the Court's advice, counsel for both parties negotiated the terms of this Order and discussed them at length before the Consent Order was drafted and signed. Arcadis' counsel had full input into the terms of this Order and well understood the scope and extent of document production that it covered. The fact that Arcadis subsequently chose to ignore the document production requirements developed pursuant to a consensual arrangement makes their action even more egregious. Arcadis' blatant failure to comply with the terms of the Consent Order clearly warrants further action from the Court.

2. <u>The Information Envirocon Requests is Highly Relevant and/or Likely to Lead to the Discovery of Admissible Evidence.</u>

Initially, Envirocon seeks an order from the Court mandating full and prompt compliance with the Consent Order. Envirocon simply wants to review and inspect <u>all</u> responsive documents in one place at one time. This should not be that difficult for Arcadis to comply with and, more importantly, such an inspection and review is extremely important to Envirocon's case given the types of information sought.

First, Arcadis failed to produce for Envirocon's on-site inspection all documents responsive to the Requests. This is patently obvious by virtue of the fact that Arcadis even failed to produce for Envirocon's on-site inspection all of the documents that it had previously produced in a "piecemeal" format in the roughly one month leading up to the June 21st Status Conference. At a minimum, Arcadis must produce all responsive documents in six broad categories, all of which are detailed in the aforementioned July 13, 2006 letter. <u>See</u> **Exh. "8"**.

Second, Arcadis failed to produce for Envirocon's on-site inspection all communications between between the Government and Arcadis. Such correspondence is extremely relevant in that it might tend to show the Government's and Arcadis' knowledge of all or some portion of Envirocon's pending claims, including whether they believed such claims were justified. Envirocon expects that

the Government and Arcadis communicated in detail about the scope, detail and basis for the modifications to their contract, all of which impacted Envirocon's work, which comprised the overwhelming majority of Arcadis' contract with the Government.

Third, Arcadis failed to produce records pertaining to costs incurred by Arcadis in connection with the Arcadis/Government contract. Such information is highly relevant. Arcadis produced one page of what might best be described as summary information of its costs. See **Exh. "8"**. However, it has not produced any source documentation. See id.

Source documentation of Arcadis' costs is highly relevant to Envirocon's claims. Envirocon is entitled to know how much of the costs for which Arcadis was reimbursed by the Government represent costs incurred by Arcadis for delays and extra work over the duration of the Project. If Arcadis is entitled to recover, and/or received payment for, these costs, then Envirocon's corresponding claims are justified as well. Envirocon cannot possibly determine this from the limited single page of summary information provided so far.

**B. Arcadis Must Sign And Verify Its Interrogatory Responses.**

Despite requests, Arcadis has failed and refused to sign and verify its Interrogatory Responses, which it is obligated to do under the applicable discovery rules. See Fed. R. Civ. P. 33(b).

No one has signed or verified the Interrogatory Responses on behalf of Arcadis.

Federal Rule of Civil Procedure 33(b)(1) requires that each answer to an interrogatory be stated "separately and fully in writing under oath . . . ." Further, Federal Rule of Civil Procedure 33(b)(2) requires that answers "be signed by the person making them . . . ." Additionally, Federal Rule of Civil Procedure 26(g)(2) requires all discovery responses to be signed by the attorney of record. No one has signed or verified the Interrogatory Responses. See **Exh. "4"**.

Arcadis has a duty to answer the interrogatories in accordance with the applicable discovery rules. See generally Hodgson v. Mahoney, 460 F.2d 326 (1st Cir. 1972). In the instant case, signature and verification is extremely important because Arcadis has acknowledged portions of Envirocon's pending claim; such acknowledgement contradicts positions that Arcadis has taken in the past. Envirocon seeks assurances, consistent with the discovery rules, that these responses are truthful and accurate.

Moreover, if there are portions of Envirocon's claims that are not in dispute, then Arcadis has no valid basis to continue withholding these funds from Envirocon. Arcadis' refusal to sign and verify its Interrogatory Responses has resulted in Envirocon continuing to incur costs and expenses to litigate apparently undisputed portions of its claim.

## III. CONCLUSION

For the above and foregoing reasons, Plaintiff Envirocon, Inc. respectfully prays that this Court enter an Order, in the form attached hereto as **Exhibit "9"**: i) compelling Arcadis to produce for Envirocon's inspection and review, hard copies of all documents responsive to Envirocon's First Request for Production of Documents and Things, including but not limited to, documents specifically called for in the Consent Order that Arcadis' counsel executed, but that Arcadis has failed and refused to produce, at the time and place designated in the attached Order; ii) compelling Arcadis to sign and verify its Interrogatory Responses; and, iii) awarding Envirocon its costs, attorneys' fees and expenses incurred in connection with the July 10, 2006 on-site inspection, as well as the preparation of the instant Motion. Envirocon will also file a motion for sanctions seeking all costs, attorneys' fees and expenses associated with the unproductive on-site inspection that occurred on July 10-11, 2006 in Boston.

## IV. LOCAL RULE 7(e)

Pursuant to Local Rule 7(e), Plaintiff Envirocon, Inc. requests neither oral argument nor an evidentiary hearing; provided, however, that Plaintiff Envirocon, Inc. is certainly willing to participate in the same should this Honorable Court deem a hearing necessary.

## V. CERTIFICATION

The undersigned counsel for Plaintiff Envirocon, Inc. hereby certify that they have in good faith conferred and/or attempted to confer with counsel for Defendant Arcadis G&M Inc. in an effort to secure disclosure without Court action.

Respectfully submitted this 24th day of July, 2006.

**ATTORNEYS FOR PLAINTIFF ENVIROCON, INC.**

By: ______________________
Robert C. Chambers
Georgia Bar No. 119460
G. Scott Walters
Georgia Bar No. 735610
Admitted *Pro Hac Vice*

SMITH, CURRIE & HANCOCK LLP
2700 Marquis One Tower
245 Peachtree Center Ave., NE
Atlanta, Georgia 30303-1227
Phone: (404) 521-3800
Fax: (404) 688-0671

By: ______________________
Brian LaPlante
R.I. Bar #5861

LAPLANTE & SOWA, LTD.
67 Cedar Street, Suite 102
Providence, RI 02903
Tel: (401) 273-0200
Fax: (401) 273-0250

**CERTIFICATE OF SERVICE**

The undersigned hereby certify that, on July 24, 2006, a true and correct copy of **Plaintiff's Motion to Compel** was served upon Defendant Arcadis G&M, Inc. by sending same via electronic mail and by depositing same in the U.S. Mail postage prepaid, properly addressed to Arcadis' counsel of record as follows:

Warren D. Hutchison, Esq.
Brian C. Newberry, Esq.
DONOVAN HATEM LLP
Two Seaport Lane
Boston, MA 02110

Brian LaPlante