# SMITH, CURRIE & HANCOCK LLP

ATTORNEYS AT LAW

A LIMITED LIABILITY PARTNERSHIP THAT INCLUDES PROFESSIONAL CORPORATIONS

Telephone: (404) 521-3800
Facsimile: (404) 688-0671

*Reply To:*
G. SCOTT WALTERS
2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, Georgia 30303-1227
Admitted to Practice in Georgia

Direct Dial: [illegible]
[illegible]

July 13, 2006

Brian C. Newberry, Esq.
Donovan Hatem LLP
World Trade Center East
Two Seaport Lane
Boston, MA 02210

**VIA FACSIMILE: (617) 406-4501 and**
**Via Electronic Mail:** ***bnewberry@donovanhatem.com***

**RE:** ***Envirocon, Inc. v. Arcadis G&M, Inc.***
**U.S.D.C., Rhode Island**
**Civil Action No. 05-516T**

**SUBJECT: Incomplete Document Production by Arcadis**

Dear Brian:

Thank you for accommodating us at your offices on Monday and Tuesday of this week to review Arcadis documents pursuant to our prior agreement and the Consent Order that we filed with the Court on Friday, July 7, 2006. Unfortunately, Arcadis' production efforts fall well short of what we previously discussed and agreed upon, including what was clearly stated in the Consent Order.

First, you agreed that Arcadis would produce hard copies of all documents that it had previously produced electronically. Clearly, this was not the case. By way of example only, I note that, other than a couple of reports which were randomly located in the files produced, Arcadis did not produce hard copies of its Daily Construction Reports. Arcadis previously produced unsigned copies of some of these reports electronically (3/22/04 through project completion); however, I did not see any of these (except as noted above) during our July 10-11, 2006 review and inspection. There are other examples of this, but this was the most obvious.

Second, the Consent Order expressly obligated Arcadis to produce all cost and payment records of Arcadis related to its contract with U.S. Fish & Wildlife Service ("FWS") for the work at Sachuest Point NWR. Although you provided one or two documents that appear to "summarize" this cost and payment information, Arcadis has not produced any source documentation to support these summaries.



EXHIBIT "8"

For example, Arcadis' unsubstantiated summary document indicates that it incurred approximately $685,000 in direct labor and another $185,000 in direct expenses, for which Arcadis has been reimbursed in full from the USFWS. I did not see one single document supporting how these numbers were generated. This is highly relevant to Envirocon's case because Envirocon is entitled to know exactly how much of these costs Arcadis received reimbursement for as a result of all the extra work and delays encountered over the project's duration. We cannot determine this from the summary information. As such, Arcadis must produce the source documentation. At a minimum, we expect to see a detailed project ledger or job cost journal which itemizes every cost Arcadis incurred, including all subcontractor payments.

Third, other than a handful of faxes and emails, there is virtually no correspondence from FWS and/or its Contract Administrator in the documents produced. Again, production of such correspondence was expressly required by the Consent Order. It is implausible that a $5 million project with the Federal Government would have such a miniscule amount of correspondence from the Federal Government's contracting entity to Arcadis. By way of example only, I note that there was no correspondence from FWS with regards to contract Mods 1 through 5, other than copies of the actual modifications/contract documents. It is reasonable for Envirocon to expect that there was correspondence from FWS discussing the scope of and basis for these modifications, negotiations as to amount and length of time, and other aspects relating to these significant and material contract modifications, all of which impacted Envirocon's work and are clearly relevant to the underlying dispute. Arcadis must produce these documents.

In addition to the three foregoing items, there are multiple other areas/categories of relevant documents that Arcadis has not produced. Generally, these would include:

1. <u>Contract Administration File</u>. According to John D'Antuono, who used to work for Arcadis in its Contract Administration Department, the contract files for this project should be located in Arcadis' Denver (Highlands Ranch, CO) office. Our requests for production as well as the Consent Order covered the production of such documents. However, we did not see evidence of the involvement of the Contract Administration Department in the documents produced in your offices, other than a couple of items generated by Van Sands that we found in 2006 correspondence files maintained by P.J. Smith. There is also no contract file material for the Arcadis/FWS Contract, other than a copy of the Contract. We believe that the Arcadis' Contracts Administration Department files based in Denver should and do have the government contract file with the FWS, vendor files with subcontractors, and change order files, which would include all supporting documentation. Arcadis must produce these records.

2. <u>Other Project Management or Senior Project Management Files</u>. During our on-site inspection, we did not see files from Larry Hosmer, Jeffrey Lyons, Darren Quillen, Tom Crone, John D'Antuono, Van Sands, and are not sure if we saw Ed Schroeder files in the documents produced earlier this week. All of these named individuals were active in this matter at some point and for varying durations throughout the life of the Project. (See Arcadis' Mandatory Disclosures). I did not see any documents that would lead me to believe that Arcadis

Consent Order, including all of the foregoing categories. I request that you produce these documents during the week beginning August 7, 2006.

Moreover, given that my client has had to incur significant cost and expense, we demand that Arcadis produce such documents at my office in Atlanta, Georgia. I will make space available for these documents and am willing to accommodate a custodian from Arcadis or your firm sitting in on our document review. I must be able to complete my review and inspection of all documents in order that we can begin fact witness depositions, which I will address by separate letter of the same date. Accordingly, if I do not hear from you by August 4, 2006 that Arcadis will produce these documents in the manner described above, I will assume that Arcadis is unwilling to comply with this more than reasonable request and will proceed immediately with filing a motion to compel, and a motion for sanctions with the Court.

I am available to discuss the contents of this letter at your convenience. In that regard, please feel free to contact me.

Very truly yours,

**SMITH, CURRIE & HANCOCK LLP**

G. Scott Walters

GSW:vw

cc: Stephen A. Watson, III - Envirocon General Counsel (via fax)
Robert C. Chambers, Esq.
Brian LaPlante, Esq. (via fax)