**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| ENVIROCON, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. NO: 05-516T |
| ARCADIS G&M, INC. | ) | |
| Defendant. | ) | |

**DEFENDANT, ARCADIS G&M, INC.'S OBJECTION TO PLAINTIFF, ENVIROCON, INC.'S MOTION TO COMPEL**

Defendant Arcadis G&M, Inc. ("Arcadis") objects to the Motion to Compel filed by the plaintiff, Envirocon, Inc. ("Envirocon"). To date in this litigation, Arcadis has done its best to accommodate Envirocon's overbroad and often irrelevant requests for information, often beyond its obligations to comply under the Rules of Civil Procedure, out of a spirit of cooperation in the hope that Envirocon would recognize that mediation rather than lengthy letters and Motions to Compel is the best way to resolve this factually complex business dispute.

Unfortunately, it has become apparent that Envirocon is bent on pursuing an erroneous theory of the case that has led it to believe Arcadis has been holding back information and generally had engaged in a pattern of deception vis-à-vis its original contractual obligations. Since this theory has no basis in reality, the parties have two entirely different views of the available discovery materials. As a result, the Motion to Compel primarily seeks information that does not exist and lodges complaints about the

discovery process to date that have no merit. Arcadis respectfully requests that it be denied for the multiple reasons described below.

**A. The Motion to Compel should be denied for failure to comply with Fed. R. Civ. P. 37.**

Fed. R. Civ. P. 37(a)(2) requires that prior to filing a motion to compel, the parties confer in good faith in an attempt to resolve the dispute at issue to avoid unnecessary legal expense and court involvement. The rule also requires that any motion to compel contain a certificate stating that the rule has been complied with. Although Envirocon's motion contains such a certificate, no such conference occurred prior to the filing of the motion.

Rather, on July 13, 2006, Envirocon's counsel sent a letter to Arcadis' counsel (Exhibit 8 to Envirocon's Motion) outlining what Envirocon believed to be deficient discovery responses. In that letter, Envirocon's counsel acknowledged that he was aware counsel for Arcadis was about to embark on a vacation and asked that the matter be addressed upon his return. In the interim, Envirocon filed this Motion to Compel on July 24, 2006 necessitating a scramble by Arcadis to file this Objection upon return of its counsel on July 31. This suggests bad faith on the part of Envirocon's counsel and at the very least shows that there has been a failure to comply with the Court rules regarding an attempt to work out a discovery dispute before burdening the Court with it. Arcadis has been given neither the time nor opportunity to discuss the matter with Envirocon and correct the misimpressions and false expectations outlined in its July 13 letter. Instead Envirocon has rushed to the Court with a lengthy and erroneous motion that never should have been filed, falsely certifying that the parties had conferred to try to work things out before seeking court intervention. For this reason alone, the Court should deny the Motion to Compel.

**B. The Motion to Compel should be denied because there are no further documents to produce.**

Envirocon served its first set of interrogatories and first set of requests for production on March 31, 2006. Unfortunately, counsel for Arcadis charged with responsibility for overseeing responses to these discovery requests was in the process of departing the law firm and responsibility for the matter changed hands at the end of April. Arcadis' new counsel, who had just took over the matter and had to become familiar with the basic facts, requested an extension of time in which to respond. Envirocon's counsel granted approximately two to three weeks additional time.

Envirocon served 44 interrogatories[1] and 61 separate requests for production. Objections aside, it was no small matter to respond to these requests. Counsel for Arcadis scrambled along with Arcadis' personnel to do the best they could in such a short time frame and faced with such burdensome requests. On May 22, Arcadis was able to submit a written response to the request for production and late into the evening on Friday, May 26, prior to the Memorial Day weekend, Arcadis was able to submit interrogatory answers (29 pages of them) by email. Given the voluminous documents demanded by Envirocon, Arcadis did the best it could to comply with what amounted in many cases to overly burdensome and irrelevant discovery requests. Indeed, despite lodging objections to nearly all of the discovery requests, Arcadis felt that in the spirit of cooperation it would be better to produce information subject to these objections and proceeded to do so.

[1] The rules do not permit Envirocon to serve 44 interrogatories. However, upon request and again in the spirit of cooperation, Arcadis agreed to allow Envirocon to serve that many interrogatories without seeking Court approval. By doing so, Arcadis thought it would shorten the discovery process and heighten the ability of the parties to resolve this dispute amicably. That accomodation has been snubbed.

Over the next few weeks, Arcadis produced, principally in electronic form, thousands of documents in response to the request for production.[2] As noted, Arcadis believed many of these documents to be irrelevant and certainly unduly burdensome to produce but nonetheless provided Envirocon the information requested. The only documents withheld by Arcadis were those protected by the attorney/client or work product privilege.[3] Finally, Arcadis produced some documents in hard copy form rather than electronic due to the manner in which they had been kept.[4]

Arcadis produced information as it was maintained in the regular course of its business, as permitted under Fed. R. Civ. P. 34(b). Envirocon complains that the documents were not "in any reasonable form of order." Envirocon may not like the way Arcadis keeps its records, but that is an internal issue for Arcadis, not a proper subject for a Motion to Compel. Envirocon also complains that Arcadis did not identify "how any of these documents were responsive to Envirocon's requests." Fed. R. Civ. P. 34(b), however, does not require this. Indeed, had Envirocon more narrowly tailored its requests in the first place, then it would not have received as many documents in response. A party

[2] Envirocon complains about Arcadis' "piecemeal" production. As noted, the requested documents were voluminous and retrieved from several different Arcadis offices. Had Envirocon given Arcadis a reasonable amount of time to search and sort through its records, the production would not have been "piecemeal". However, Envircon insisted that documents be produced in what turned out to be an unrealistic timeframe with a goal of taking depositions in June. Arcadis attempted to produce records as quickly as it could which resulted in multiple productions. The depositions ultimately were scheduled for September.

[3] Arcadis has not produced a privilege log because it had an informal agreement with Envirocon that no privilege log would be necessary unless Envirocon specifically requested it. Given the schedules of the principal attorneys working on this matter, counsel for Arcadis suggested that it would be a more productive use of time not to engage in the drafting of a privilege log prior to Envirocon reviewing the documentation.

[4] Envirocon states that it was unable to read all of the electronic data provided by Arcadis. Since the files were all created in commonly used formats, Arcadis could read all of the information as well as its counsel. To the extent that Envirocon did not have the sufficient computer software to read the information, all it had to do was request that those files at issue be printed out.

can hardly ask for all records relating to a project and then complain when all records are delivered, including many that are quite irrelevant to the issues in the suit though responsive to the requests as asked.

The parties then appeared at a pre-arranged discovery conference with the Court on June 21 at which time Envirocon made it clear that it would prefer to review the documents that had already been produced electronically in hard copy form. Arcadis had no obligation to produce the documents in this fashion. Indeed, it was more expensive and burdensome for Arcadis to produce the documents in this fashion considering that it had already produced the documents in electronic form, a more practical method in the age of computers for producing information. Nonetheless, again in the spirit of cooperation and with the hope that this would lead to the mediation that Arcadis still believes is the most practical way to resolve this dispute, Arcadis agreed to make available hard copies of the documents and entered into a consent order to do so at the Court's urging.[5] The production was made on July 11 and 12 at Arcadis' counsel's office in Boston.

Apparently this has still not satisfied Envirocon. After reviewing the documents Envirocon now claims there are a number of documents that "should be" there that are not. Envirocon continues to insist that all documents have not been produced. The ultimate problem here is that Envirocon expects documents to exist that simply do not. Other than the exception noted below, Arcadis has produced all non-privileged documents responsive

---

[5] Envirocon insinuates several times in its motion that Arcadis has somehow waived any objections it may have to the overly burdensome and irrelevant discovery requests. That is not true. Arcadis asserted a number of objections based on relevancy, over-broadness etc. and stands by them. However, Arcadis has also made the decision not to withhold any documents based on relevancy or burdensomeness (with one exception discussed below) because it found it easier simply to respond in full, both for practical reasons but also because it is not trying to hide anything and maintains that full disclosure by both sides followed by a mediation is the best way to resolve this matter. Thus the question of non-privilege objections is somewhat academic but Arcadis wants it clear that it has waived none of its rights.

to the requests for production. Even after receiving the Motion to Compel, Arcadis went back and asked all of its personnel connected to this project to again review their files. Arcadis did find a small number of additional documents that were responsive to the requests. These consist of payment and invoice records for amounts paid to subcontractors. The reason Arcadis had not located these documents earlier is that they had been kept with Arcadis' accounting department rather than in the project files where Arcadis' personnel believed them to be kept. This was a large project for Arcadis, it encompassed personnel from multiple offices with documents kept in multiple locations and departments, and it was simply not easy for Arcadis to accurately put together a complete set of responsive documents in a short time frame. Arcadis did the best it could under the circumstances.

In any event, Arcadis has now either produced those additional documents or will have done so within one week of filing this objection, although it should be noted that it previously produced logs showing the payments, just not the actual invoices. There is nothing else to produce. Arcadis is not hiding anything. The Motion to Compel serves no purpose.

The basic problem in this case appears to be the highly suspicious frame of mind of Envirocon. The United States Fish and Wildlife Service ("UFW") hired Arcadis to remediate a site in Middletown, Rhode Island. Arcadis in turn subcontracted a portion of the work to Envirocon. These were two separate contracts. Envirocon has previously voiced both in its correspondence to Arcadis as well as informally during the pre-trial conference on June 21 before the Court, that it believes Arcadis is withholding funds paid to it by UFW which are "due" Envirocon. This misses the point. UFW paid Arcadis a flat fee to perform certain services. Arcadis in turn contracted with Envirocon for it to perform

a certain portion of those services. However, there is no link between the amounts paid by UFW to Arcadis and the amounts Arcadis paid Envirocon. They are two separate contracts. Envirocon appears to believe that because it allegedly performed a larger percentage of the actual work done on site than it was paid for relative to the amounts paid Arcadis by UFW, that Arcadis is in breach of contract. This is a logical fallacy that does not follow. Nonetheless, framing the issue this way has driven Envirocon's conduct in this litigation and led to this discovery dispute.

For example, much of the information Envirocon has sought in discovery relates to correspondence between Arcadis and UFW. In addition, it relates to detailed information concerning where the funds paid by UFW to Arcadis ultimately were directed – whether to Arcadis itself as profit, to Arcadis to cover expenses, to other subcontractors or to Envirocon. While Arcadis has been willing to produce this information and in fact has done so, all of this is irrelevant to whether Arcadis breached any contractual responsibilities to Envirocon.

The bottom line is that whatever Envirocon may believe exists or "should" exist, Arcadis has responded in full to the discovery requests. The only items that are responsive to the requests that Arcadis has not turned over are documents withheld on the basis of privilege and documents loosely characterized as "back-up documents for vendor charges". In other words, if Arcadis paid, for example, a Federal Express charge on the project, the back-up documentation for the payment has not been produced (e.g. a check) because such records are not grouped by project but by vendor which would mean Arcadis would be required to search through all Federal Express charges Arcadis has incurred in connection with any aspect of its business. This would apply equally to other vendors and to per diem expenses for meals and such. Total such charges on this project amount to approximately

$185,000, a very small percentage of the overall project. Mandating production of such back-up documents would be overly burdensome and, given the irrelevant nature of the information sought, inappropriate. Arcadis has already produced summaries of its expenses on this project which is more than sufficient.

There is nothing else to produce. The Motion to Compel should be denied.

**C. Answers to interrogatories have been signed.**

Arcadis has produced signed interrogatory answers to Envirocon. As noted above, Arcadis emailed an unsigned version of the interrogatory answers the Friday evening before Memorial Day weekend. The signature page was to follow shortly thereafter. However, due to some internal confusion, the signature page was never mailed to Arcadis' counsel to be passed on to Envirocon's counsel. That has been rectified.

**D. Conclusion**

This Motion is a waste of the Court's time. Given the voluminous nature of the information requested, Arcadis has done the best it can to produce what it has as quickly as reasonably possible. In fact, it has now produced the information twice, first electronically and then, in an attempt to accommodate, again in paper form. There is nothing else to produce. Arcadis is tired of false accusations and asks the Court to deny this Motion and award Arcadis its expenses incurred in having to respond to it, particularly given the false certification that the parties had conferred over the issues contained in it when they

manifestly had not, particularly when such a conference should have obviated the need for the Motion altogether.

Respectfully submitted,
ARCADIS G&M, INC.
By its attorneys,

/s/ Brian C. Newberry
Warren D. Hutchison, R.I. Bar # 5571
Brian C. Newberry, R.I. Bar # 5542
Donovan Hatem LLP
Two Seaport Lane
Boston, MA 02110
Tel: (617) 406-4500
Fax: (617) 406-4501
Dated: August 3, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 3, 2006.

Brian LaPlante, Esq.
LaPlante & Sowa, Ltd.
67 Cedar Street, Suite 102
Providence, RI 02903

G. Scott Walters, Esq.
Smith, Currie & Hancock, LLP
2700 Marquis One Tower
245 Peachtree Center Ave.
Atlanta, Georgia 30303-1227

/s/ Brian C. Newberry
Brian C. Newberry

01023003/25223.1